IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
FILED

MAY 0 8 2002

Michael N. Milby
Clerk of Court

Donald Keith King )
    Petitioner, )
 )
vs. )
 )
United States of America )
    Respondent. )

Civil No: B-02.095
Case No: CR B-00-437

## MEMORANDUM OF LAW IN SUPPORT OF
## 28 U.S.C. §2255 MOTION TO VACATE, SET ASIDE,
## OR CORRECT SENTENCE

    Comes Now, Donald Keith King, Petitioner in pro se, interposing **Haines v. Kerner,** 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) asking that this Court construe his pleadings more liberally than those prepared by professional attorneys, and submits this Memorandum of Law in support of his claims for relief pursuant to Title 28, United States Code, Section 2255.

### JURISDICTION

    This Court has jurisdiction pursuant to 28 U.S.C. §2255 as Petitioner is in custody under this Court's judgement where Petitioner was sentenced to 97 months imprisonment which he is now serving. Petitioner's Direct Appeal became final on December 11, 2001. Petitioner's Motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 is timely filed.

1

## **STATEMENT OF THE CASE**

A grand jury indicted Petitioner on October 24, 2000, charging him with three offenses in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B): (1) conspiracy to possess, with intent to distribute, powder cocaine and crack cocaine; (2) possession with intent to distribute more than 500 grams (specifically, approximately 991.8 grams (specifically, approximately 49.3 grams) of crack cocaine. Petitioner pleaded not guilty before a United States Magistrate Judge on November 1, 2000.

On November 8, 2000, Petitioner filed a Motion to Suppress. On December 7, 2000, the district court denied Petitioner's Motion to Suppress because Petitioner was detained by actions of the bus company and not the actions of law enforcement.

Based both on the facts elicited during the suppression hearing and on stipulation of facts by the parties, the district court (sitting alone) then convicted Petitioner of only one of the three charges: possession of powder cocaine with intent to distribute. The prosecution abandoned the other counts.

On March 2, 2001, the district court sentenced Petitioner to 97 months, to be followed by a four-year period of supervised release. No fine was imposed, and the court remitted the $100 special assessment, upon motion by the prosecution.

Petitioner's appellate counsel timely filed notice of appeal. Appellate counsel argued only that Petitioner's sentence violates the principles espoused in **Apprend v. New Jersey**, 530 U.S. 466, 147 L.Ed2d 435, 120 S.Ct. 2348 (2000) because it was based in part on a quantity of crack cocaine that was not determined

2

by the trier of fact. The Fifth Circuit held on December 11, 2001, that this argument was foreclosed by **United States v. Doggett**, 230 F.3d 160, 164-165 (5th Cir. 2000), cert. denied, 121 S.Ct. 1552 (2001).

## STATEMENT OF THE FACTS

On October 17, 2000, Petitioner was at a bus station in Harlingen, Texas, waiting in line to board a bus. There were Border Patrol officers standing in plain view of the passengers with their guns out. Harlingen police officer Jose Garcia was conducting drug interdiction activities. Officer Garcia was dressed in plain clothes with a badge hanging on a chain around his neck. After going through the line questioning and searching passenger-by-passenger, officer Garcia eventually reached Petitioner and identified himself. He informed Petitioner who he was and his purpose for being there. He began to question Petitioner and asked for his bus ticket. Once the bus ticket was in the officer's possession, he finally asked Petitioner the one question he was interested in, "do you have anything illegal in your bag?" Officer Garcia asked to look in the bags, and Petitioner asked "is that necessary?" Officer Garcia responded that "it was not necessary, but that the police try to check all carry-on bags".

Officer Garcia first searched the backpack, but did not find anything illegal. Officer Garcia next searched the duffle bag. As he was feeling around for hard objects, his partner, officer Ramiro Martinez's k-9 dog "lunged forward at the bag" and hit officer Garcia's right forearm. Officer Martines, the canine

handler, pulled the dog away, and officer Garcia continued his search. Officer Garcia found 3 sealed metal cans wrapped in blue cloth. Officer Garcia asked officer Martinez to bring his dog over to the cans. The dog alerted to one of the cans by scratching. Officer Martinez asked for Petitioner's permission to open the cans, but Petitioner declined. Officer Martinez told Petitioner that they would detain him while they obtained a search warrant. The police obtained a search warrant and found cocaine inside the cans.

## STATEMENT OF THE ISSUE

**WHETHER THE DISTRICT COURT ERRORED IN DENYING PETITIONER'S MOTION TO SUPPRESS IN VIOLATION OF PETITIONER'S FOURTH AMENDMENT PROTECTION AGAINST UNREASONABLE SEARCHES AND SEIZURES**

## ARGUMENT 1

The touchstone of the Fourth Amendment is reasonableness. See **Ohio v. Robinette**, 519 U.S. 33, 136 L.Ed 347, 117 S.Ct. 417 (1996); **Florida v. Jimeno**, 500 U.S. 248, 250, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991). "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." **Robinette**, 519 U.S. at 39, 136 L.Ed2d at 354. The Supreme Court and Fifth Circuit have long held that "warrantless searches and seizures are per se unreasonable unless they fall within a few narrowly defined exceptions." **United States v. Cardenas**, 9 F.3d 1139, 1147 (5th Cir. 1993), cert. denied, 511 U.S. 1134, 114 S.Ct. 2150, 128 L.Ed.2d 876 (1994)).

In general, any restraint on a person amounting to a Fourth Amendment seizure is invalid unless justified by probable cause. **United States v. Cooper**, 43 F.3d 140, 145 (5th Cir. 1995). The Constitution does not permit police officers, without probable cause or reasonable suspicion, to restrain the liberty of American citizens. The well - established test is that if, by physical force or show of authority, a reasonable citizen would not believe that he is free to ignore police questioning and go about his business, he has been unconstitutionally seized. **Florida v.**

**Bostick**, 501 U.S. 429, 115 L.Ed.2d 389, 111 S.Ct. 2382; **Terry v. Ohio**, 392 U.S. 1, 19 n.16, 20 L.Ed2d 889, 88 S.Ct. 1868 (1968).

The Fifth Circuit has enumerated six factors relevant to whether a consent to search was voluntary or was the product of coercion, expressed or implied:

1. the voluntariness of defendant's custodial status;
2. the presence of coercive police procedures or physical punishment;
3. the extent and level of the defendant's cooperation with the police;
4. the defendant's awareness of his right to refuse to consent, and whether the defendant was informed of this right;
5. the defendants's education and intelligence; and,
6. the defendant's belief that no incriminating evidence would be found.

**U.S. v. Jenkins**, 46 F.3d at 451. "[A]lthough all of the above factors are highly relevant, no one of the six factors is dispositive or controlling of the voluntariness issue." Id. (quoting **United States v. Oliver-Becerril**, 861 F2d 424, 426 (5th Cir. 1988) (citations omitted). Indeed, the court is to examine "the totality of the circumstances." **United States v. Broussard**, 80 F.3d 1025, 1036 (5th Cir.), cert. denied.

This appeal challenges the denial of petitioner's Motion to Suppress which was held on November 20, 2000. The court errored when it hinged its denial on the grounds that petitioner was (one) "never detained by law enforcement officers at the time

6

that this encounter took place" Tr. 126; (two) consent was "corroborated by a person who has absolutely no connection with law enforcement other than being present at the time and place where law enforcement routinely works" Tr.125; and (three) "there was only two police officers during part of the event was not coercive."

In the instant case, the court did not examine the "totality of the circumstances" when it denied petitioner's Motion to Suppress. A proper analysis of this case requires the court to carefully follow the chain of events leading up to the full search of petitioner during which the drugs were found in order to determine if petitioner's Fourth Amendment rights were violated at any time.

The judge at the Motion to Suppress Hearing began her analysis of the consent to search with the initial contact of officer Garcia and the petitioner. When examining the "totality of the circumstances," the court must consider how the entire line of passengers, including the bus driver, were affected by the intrusion of the police officers and the police canine dog. In this case, one officer goes to the front of the line of passengers with a police badge on a chain hanging around his neck and start questioning and searching passenger-by-passenger. While the passengers-by-passenger search is being conducted by officer Garcia, officer Ramiro Martinez is parading his canine dog around and over the passenger luggage bins in view of the petitioner and other passengers. At least two agents from the Border Patrol Agency, with their guns in plain view, stood nearby and

7

in plain sight of the passengers and the petitioner. This show of authority and coercive environment indicate that "a reasonable person... would not have felt free to disregard [the officers] requests without some positive indication that consent could have been refused." See **United States v. Washington**, 151 F.3d 1354 (11th Cir. 1998). The bus driver in this case, and his whereabouts, is crucial to the issue at hand. This is especially true since the District Judge in this case stated that any detention of the petitioner "was not due to any actions of law enforcement. It was more to do with the actions of the Bus Company in waiting to have the other passengers loaded or present tickets and maybe getting the luggage on board or whatever, but he was never detained by law enforcement."Tr.126. There are no facts in the record which provide a predicate for the district court judge's ultimate conclusion that it was the actions of the bus company which caused petitioner to be detained. There was no testimony presented to support her conclusion. In fact, the testimony presented at the Motion to Suppress hearing indicates that there were passengers already boarded on the bus, and passengers preparing to board the bus with their tickets in hand. A bus driver who sees a police officer with a canine dog sniffing on the luggage bins on the side of the bus that he's driving, another officer searching and questioning his passengers, and two border patrol officers standing nearby with guns visable would possibly believe that he can't leave at that time. On the other hand, the record in this case does not disclose whether the bus driver or the bus company was delaying departure

at the request of the police. There is nothing in the record which serves as a factual predicate for the district judge to conclude that the petitioner was being detained because of actions of the bus company.

The show of authority around the bus terminal created an environment so coercive that the bus driver might have believed that he could not allow the passengers to board the bus until they had been questioned and searched. This show of authority and coercive environment indicate that "a reasonable person... would not have felt free to disregard [the officers] requests without some positive indication that consent could have been refused." **Bostick**, supra.

In this case, officer Garcia eventually reached petitioner, after questioning and searching all of the passengers in front of him. He informed petitioner who he was and his purpose (drug interdiction) for being there. He began to question petitioner and asked for his bus ticket. Once the bus ticket was in the officer's possession, he finally asked petitioner the one question he was interested in, "do you have anything illegal in your bag?" The show of authority compounded with the passenger-by-passenger search, roaming k-9 dog, the sequence of questioning followed by the request for petitioner's bus ticket and punctuated by the single question the officer was interested in, "do you have anything illegal in your bag?", was sufficient to cause a reasonable citizen to believe that he or she was not free to ignore police questioning and go about their business.

Law enforcement officers, without warrant or probable cause,

may conduct a search if the individual voluntarily consents to the search. **United States v. Brown**, 102 F.3d 1390, 1395 (5th Cir.1996). The primary inquiry here is whether the petitioner's consent to the search is truly voluntary. Id. at 1396. Voluntariness is a question of fact to be determined by the totality of the circumstances. Id. When the government relies on the consent of the defendant to justify the lawfulness of a warrantless, suspicionless search, it has the burden of proving that the consent was, in fact, freely and voluntarily given. **Schneckloth v.Bustamonte**, 412 U.S. 218, 221, 93 S.Ct. 2041, 36 L.Ed2d 854 (1973).

The government in this case did not meet its burden of proving voluntariness, and the district court judge errored in not applying the six factor test enumerated by the Fifth Circuit. Here, petitioner's custodial status was not voluntary in that officer Garcia did not ask petitioner if he had anything illegal in his bag until he had petitioner's bus ticket in his possession. There were two Border Patrol officers with guns in plain view, a canine sniffing dog with an officer handling him, and officer Garcia questioning and searching passenger-by-passenger in line directly in front of petitioner. This was sufficient to indicate a coercive environment. Petitioner's cooperation with the officer was at a minimum at best. When the officer asked if he could search petitioner's bag, the petitoner asked the officer, "is that necessary?" Tr.16. Petitioner was never advised that he had a right to refuse consent. Finally, although petitioner is somewhat educated, there was no evidence or testimony that petitioner knew of his right to deny consent.

It is apparent from the record in this case that the district judge did not apply the above facts to the law governing this issue. This court should take note that at no time during petitioner's encounter with law enforcement was he told of his right to refuse consent to the requested search. The Supreme Court has found that knowledge of the right to refuse is not required for a defendant's consent to be voluntary. **Ohio v. Robinette**, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed2d 347 (1996) (citation omitted) ("While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent."). However, the Supreme Court has also found that the advisement to a defendant by police of his right to refuse is particularly significant in determining the issue of voluntariness. **Florida v. Bostick**, 501 U.S. 429, 432, 437, 111 S.Ct. 2382, 115 L.Ed2d 389 (1991) (emphasizing that police specifically advised the defendant of his right to refuse consent in determining whether a reasonable person would feel free to decline the officer's request or to otherwise terminate the encounter); **United States v. Muniz-Melchor**, 894 F.2d 1430, 1440 (5th Cir. 1990) (recognizing that though knowledge of the right to refuse is not a requirement for a finding of voluntary consent, it is a "central factor in any voluntariness analysis").

11

## ISSUE 2

**WHETHER PETITIONER'S APPELLATE COUNSEL WAS INEFFECTIVE WHEN SHE FAILED TO RAISE MERITORIOUS ISSUE ON DIRECT APPEAL IN VIOLATION OF PETITIONER'S SIXTH AMENDMENT RIGHT AS GUARANTEED BY THE CONSTITUTION OF THE UNITED STATES**

## ARGUMENT 2

A criminal defendant is entitled to constitutionally effective assistance of counsel on direct appeal. See **Evitts v. Lucey**, 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); **Goodwin v. Johnson**, 132 F.3d 162, 170 (5th Cir. 1997); **Lombard v. Lynaugh**, 868 F.2d 1475, 1479 (5th Cir. 1989). In order to prove ineffective assistance of counsel, a petitioner must first show that his attorney's performance was deficient and second, demonstrate that such deficiency caused him prejudice. **Strickland v. Washington**, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed2d 674 (1984); **Jones v. Jones**, 163 F.3d 285, 300 (5th Cir.1998).

In this case, the crux of the government's case stems from the testimony adduced at the suppression hearing. Although petitioner's trial counsel contested the legality of the consent to search at the suppression hearing, he abandoned the duty of loyalty to his client, coerced him into waiving a jury trial and stipulating to facts that were at dispute, and effectively joined the government in an effort to obtain the conviction, thus, suffering from a conflict of interst. A lawyer who stipulates to everything has utterly failed to "subject the prosecution's case to meaningful adversarial testing." **United States v. Cronic**, 466

U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed2d 657 (1984).

Petitioner in this case sought on numerous occasions to have his appellate counsel raise the consent to search issue on appeal which was contested and preserved at the suppression hearing. Appellate counsel refused to raise the issue because in her opinion, "the issue was frivolous". See letter attached as exhibit "A". To render effective assistance, counsel on appeal "must master the trial record, thoroughly research the law, and exercise judgement in identifying the arguments that may be advanced on appeal." **McCoy v. Court of Appeals of Wis.**, 486 U.S. 429, 438, 108 S.Ct. 1895, 100 L.Ed2d 440 (1988). "In preparing and evaluating the case, and in advising the client as to the prospects for success, counsel must consistently serve the client's interest to the best of his or her ability." Id.

When appellate counsel's deficiencies do not prevent appellate review, or counsel does not entirely fail to challenge the prosecution's case, to prevail on an ineffective assistance of counsel claim, the petitioner must show that counsel's errors were so serious that counsel was not functioning as the counsel guaranteed to the petitioner by the Sixth Amendment. See **Ellis v. Lynaugh**, 873 F.2d 830, at 840; **McCrae v. Blackburn**, 793 F.2d 684, 688 (5th Cir.), cert. denied, 479 U.S. 965, 107 S.Ct. 466, 93 L.Ed2d 411 (1986); **Hamilton v. McCotter**, 772 F.2d 171, 182 (5th Cir. 1985). Unless there has been "actual or constructive complete denial of any assistance of appellate counsel," the two-prong test set forth in **Strickland**, requiring a showing that counsel's performance was deficient and that such deficiency

prejudiced the defense, applies equally to a claim of ineffective assistance of appellate counsel. **Sharp v. Puckett**, 930 F.2d 450, 451-52 (5th Cir. 1991) quoting **Rose v. Johnson**, 141 F.Supp. 2d 661 (S.D. Tex. 2001). In **Rose**, the court explained that, "If, however, the defendant 'was afforded almost no appellate representation whatever, and there were nonfrivolous appeal issues,' prejudice is presumed." **Moss v. Collins**, 963 F.3d 44, 47 (5th Cir. 1992), cert. denied, 506 U.S. 1055, 113 S.Ct. 983, 122 L.Ed2d 136 (1993) (quoting **Strickland**, 466 U.S. at 692, 104 S.Ct. 2052). As the Fifth Circuit explained in **Sharp v. Puckett:**

> In **Penson v. Ohio**, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), the Supreme Court distinguished between two types of denial of effective assistance of counsel: first, when the deficiency consists of failure to raise or properly brief or argue certain issues on appeal, and second, when there has been actual or constructive complete denial of any assistance of appellate counsel. The first type of case requires a showing of **Strickland** prejudice. When, however, the defendant is actually or constructively denied any assistance of counsel, prejudice is presumed, and neither the prejudice test of **Strickland** nor the harmless error test of **Chapman v. California**, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed2d 705 (1967), is appropriate.

Accordingly, in the instant case, petitioner's appellate counsel failed to "master the record", thereby denying petitoner effective assistance of appellate counsel. A thorough review of the records reveals that not only did the trial court fail to consider the six factors enumerated by the Fifth Circuit in determining the voluntariness of the consent to search, but

14

also that petitioner's trial counsel utterly failed to "subject the prosecution's case to meaningful adversarial testing". Petitioner's appellate counsel failed to advance these meritorious issues on direct appeal because she neglected to thoroughly review the records and disregarded petitioner's numerous requests to present these issues.

In **United States v. Cronic**, supra, the Court held that "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable". See also **Lombard v. Lynaugh**, 868 F.2d 1475 (5th Cir. 1989). In **Lombard**, the court found that his appellate counsel "did nothing to attempt to aid Lombard's appeal, beyond the initial perfecting of the appeal itself." The Court went on to state that, "we are hence comfortable in not requiring **Lombard** to meet the **Strickland** standard of showing, at least, that there is a reasonable probability that his conviction would have been reversed had he had the effective assistance of appellate counsel." Further, the Court noted, "although there were clearly nonfrivolous issues which could have been urged on **Lombard's** appeal and we are unable to determine that **Lombard's** conviction would **not** have been reversed had he had effective assistance of appellate counsel, we are likewise unable to determine the converse. However, we conclude that these considerations do not suffice to require **Lombard** to show **Strickland**-type prejudice; **Lombard**, in a functional sense, was afforded almost no appellate representation whatever, and there

were nonfrivolous appeal issues which we cannot say with full confidence would not have resulted in reversal had they been raised and properly argued by competent appellate counsel. **Lombard** therefore need not, as he would have to if **Strickland** applied, discharge the burden of convincing us that, at the least, reversal was reasonably probable had he been properly represented on Appeal."

Likewise, in the instant case, petitioner's appellate counsel had before her nonfrivolous issues which very well may have led to a reversal of petitioner's conviction. Instead, appellate counsel raised an issue that is unrelated to the validity of petitioner's conviction, and foreclosed in the Fifth Circuit since petitioner's sentence did not exceed the Statutory Maximum. In petitioner's appellate counsel's words, "Mr. King (petitioner) appeals to preserve the issue for possible Supreme Court review."

For the reasons stated, counsel's performance was so pervasively defective, in that she took virtually no action at all on petitioner's behalf despite the presence of at least two clearly nonfrivolous appellate issues, that petitioner in substance was denied any effective assistance of counsel whatever on his direct appeal.

## CONCLUSION

For these reasons, the petitioner, Donald Keith King, respectfully request that this court vacate his conviction and remand for new trial or whatever relief this court deems appropiate.

Respectfully submitted,

_____
Donald K. King, pro se
Federal Correctional Complex
Coleman-Medium #94445-079
P.O. Box 1032
Coleman, Fl. 33521

Sworn under penalty of perjury
this 29 day of April, 2002.



Mr. King
September 27, 2001
Page 2


At any rate, the Fifth Circuit's address is United States Court of Appeals, for the Fifth Circuit, 600 Camp Street, New Orleans, LA 70130. Please include your Fifth Circuit case number, No. 01-40292, in any correspondence with them.

                                        Very truly yours,

                                        *Laura Leavitt for*
                                        RENATA GOWIE
                                        Assistant Federal Public Defender
                                        Southern District of Texas

RG:dm

O:\Users\Gowie\WPDOC\APPEALS\KING\CLIENT3.wpd

**FEDERAL PUBLIC DEFENDER**
*Southern District of Texas*
Lyric Office Centre
Post Office Box 61508
Houston, Texas 77208-1508

**FEDERAL PUBLIC DEFENDER**
ROLAND E. DAHLIN II

**First Assistant:**
THOMAS S. BERG

**Senior Litigation Counsel:**
H. MICHAEL SOKOLOW

September 27, 2001

Telephone:
713.718.4600

Fax:
713.718.4610

**CERTIFIED MAIL NO. 7001 1140 0001 1647 8689**
Mr. Donald Keith King
Reg. No. 94445-079
Federal Correctional Institution - Medium
846 NE. 54th Terrace
Coleman, FL 33521-8997

Dear Mr. King:

This is a response to your two letters dated September 19, 2001.

In my previous letters and during our phone conversations, I have explained to you that I did not include the consent issue in my brief because it is a frivolous issue. Although you testified at the suppression hearing that you did not consent to a search of your belongings, the district court's finding that you did consent is supported by the testimony of not only the officer, but also of a bus employee. Thus, the record supports the district court's factual finding that you consented. As I have told you before, the consent issue is not on appeal and I will not raise it on appeal. As your appellate lawyer, I am responsible for the content of the brief, and, thus, I have to decide what issues to raise in your appeal. I cannot raise an issue simply because you want me to do so. In fact, I am subject to sanctions for raising frivolous appellate issues or for assisting a defendant in raising a frivolous appellate issue. *See United States v. Ogbonna*, 184 F.3d 447, 449 (5th Cir. 1999).

In my previous letters and during our phone conversations, I have repeatedly told you that if you want to raise the consent issue on appeal, the only way you can do so is to file your own *pro se* brief with the Fifth Circuit raising the issue and also asking the Fifth Circuit to disregard my brief and consider only your *pro se* brief. As I have previously explained, *pro se* means that you represent yourself without the assistance of counsel. However, I must warn you that the United States Supreme Court has held that criminal defendants do not have a constitutional right to represent themselves on appeal. *See Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 120 S. Ct. 684 (2000). Thus, there is a chance that the Fifth Circuit will not let you proceed *pro se*.

O:\Users\Gowie\WPDOC\APPEALS\KING\CLIENT3.wpd